Good morning and may it please the court. My name is James Savitt and I represent the appellant, the Christiansen Firm. Given the limited time and the court's crowded docket, I'm not going to summarize my brief or attempt to address all of the points we made there. Instead, what I'm going to do is focus upon three points only that I think can benefit particularly from discussion today. Obviously, I'll entertain whatever questions the court would like, but there are three points I'm going to focus on. One is the standard of review, which is de novo, not clear ever. Second, the inherent distinctiveness of one of the marks at issue, the one called CC Law Firm. And I'll note to the court that if any one of the marks is distinctive inherently, that would mandate reversal. I'm going to talk about that one. And the third is the fiduciary duty issue. Can I just get the lay of the land a little bit just in terms of the statute here, the Cyber-Squatting Statute? Sure. Which is part of the Lanham Act. Is there a definition anywhere in the Lanham Act of what a mark is? There's all this case law about what a mark is, but does the statute have a definition of a mark? I couldn't find one easily. I'm searching my mind, Your Honor, and I frankly, of what a trademark is. I mean, I believe there is something in the Act which describes it as a descriptor of goods and services, but I don't think there's anything in the Act that goes much beyond that. So then you come to the cyber-squatting piece, which says, and this is the part that I keep wondering about. It says, a person shall be liable in a civil action by the owner of a mark. So now you're using the term mark as a work, sort of a term of art that's developed over time, but isn't really defined, I don't think. And then it says, including a personal name which is protected as a mark under this section. And they keep repeating, including a personal name which is protected as a mark under this section, and no other part of the Lanham Act refers to a personal name. So I'm wondering if you know anything about how that got in there and what it's supposed to mean and so on. It's a very interesting question, and there's not any authority I saw explaining what that phrase means. And to be candid with the Court, let me note that the Lanham Act does say someplace else that marks which are primarily surnames are not entitled to protection absent secondary meaning. In the statute? I'm sorry? In the statute. That's in the statute. I can't provide, but I want to be candid with the Court. That is actually in the Lanham Act somewhere, yes. Do you think C.C. is a personal name? C.C. is anything but a personal name. It's a set of initials. And that's the second point I was going to make, and I'm happy to go there first for the Court. Frankly, Judge, every single piece of authority that we have been able to find that addresses initials, C.C., O.A.G., C.A.E., I.E.C., every single case, whether from this circuit or other circuits, that have addressed initials has either held or found, held as a matter of law or found following trial, that the initials are inherently distinctive because they are an unpronounceable set of letters. They don't describe anything to a third party. They wouldn't mean anything. Well, you certainly can pronounce them. C.C.? C.C. Well, I mean, you can say the letters, but it doesn't form something you can say other than, I mean, obviously any string of letters, one can say the letters, but C.C. doesn't form a word that one can pronounce. And if it doesn't form a word that one can pronounce, how can it possibly be generic? How can it possibly be descriptive? Because it's not a word in the language. It doesn't describe anything. It doesn't say what anything is, which is the hallmark of genericness. It describes her name in one sense. It describes her name if you already know what it's referring to. But that's why I go back to the cases that have actually addressed the question. The O.A.G. travel planner case, for example. I mean, O.A.G. is a, it's much clearer to the public what that was stood for. Official Airline Guide, the publisher of the book, whose name was actually on the book, but the court held, quote, The arrangement of letters, O.A.G., as coupled with the more descriptive term travel planner, constitutes an arbitrary mark that qualifies for trademark protection without the need to prove secondary meaning. And the same holding was from C.A.E. Incorporated in the Seventh Circuit. The mark is an unpronounceable set of letters and thus falls into the category of letter marks generally afforded broader trademark protection. The case relied upon by this court in the O.A.G. case was the I.E.C. case. Electronic, excuse me, E.C.I., Electronic Communications Inc. case from the Seventh Circuit. Again, the use of initials was found arbitrary and fanciful. And the same is true if we now look to P.T.O. determinations, which this court in a case decided since our opening brief, but prior to our brief, the Veracek v. Laiati case, the court held in that case that this court may look to and may defer to P.T.O. registrations. And there we've presented to them in our brief, C- firm was held distinctive without proof of, was registered as distinctive without proof of secondary meaning, as was L.J.H. Law. My goodness, what's the difference between L.J.H. Law and C.C. Law firm? And we also see that the P.T.O. has registered the Clinton firm. I mean, that's way more descriptive. It's got the person's name right in it. The P.T.O. has registered Park Law firm. Well, if those are distinctive without proof of secondary meaning, my goodness, how could C.C. Law firm not prove? Not prove. What would be the consequence of a reversal on this ground? What would happen next? Thank you, Your Honor. The court has held as a matter of law that the acts of the respondent here constitute registration. The calling up of network solutions, the telling of network solutions without any authorization, hey, take it out of the Christian firm's name and put it in my name, and by the way, if that crank woman calls you up and tries to say it's her law firm, ignore that person. All of that has been found by the court, excuse me, held by the court as a matter of law to constitute registration. We'd have a remand on the – well, first of all, we'd have a remand for a trial on the question of bad faith intent to profit. Trial on what, I'm sorry? The question of bad faith intent to profit. There are three elements to a cyber piracy claim. One is – That has not been decided. That has not been – the court specifically stated that there was a question of fact on that issue, that there was substantial evidence presented on the question, but declined to decide it as a matter of law. Could that be – The third thing that would be decided is the amount of damage, and the plaintiff would have the election to decide – to present actual damages and then decide whether she wanted – it wanted actual damages or statutory damages, which are, I think, $1,000 to $100,000 each per domain name registered. So we would have a trial on the other elements of the ACPA claim. Now, if the court sent this – There are – it depends on the grounds the court sends it back. It's $1,000 to $100,000, so they could be as much as $100,000. Why would it be $100,000? Well, the statute says that for each domain name – What reason do we have to make it $100,000? No one's asking this court to rule on what the statutory damages should be. I understand. What possible – there's one domain name. Well, there are four, but – I know, but you're concentrating on the same domain. That's correct, Your Honor. So let's say there was one. Yes. So that's $1,000, is that right? No, it's one – it's in the discretion of the trial court to issue between $1,000 and $100,000 per domain name. I see. And our argument would be, whether to this court or to any other court, that my goodness, it doesn't get much more bad faith than this. I mean, again, this is out now theft and ransom. That will be your argument to the district court. You're not making it now. We are not making it here. It's not at issue. Okay. You wanted to say something about the fiduciary duty issue? I did. The fiduciary duty denial of my clients, the appellant's motion for liability on breach of fiduciary duty, was error because it was based upon a misapplication of the law of agency. The example I wanted to raise for the court, which I think puts it all in context, is assume you went to a financial advisor and you said to that financial advisor, here are my accounts, manage them for me. Let's back up a minute. Yes. The district court denied summary judgment on that, and then what happened? You had a trial on it, no? That's correct. So denying summary judgment doesn't make any – you can't appeal that anymore? The law is to the contrary. No, the law is not to the contrary. The law is you cannot appeal it anymore if it's on the ground of factual dispute because you had your trial on the facts, didn't you? Well, there are other cases which I've seen, Your Honor. The last thing I'm going to do is tell Your Honor that I know the law better than the court. This court makes the law, so I'm not trying to do that. But I have seen many cases. There are cases out there holding that an appeal from a denial of summary judgment, the court can only look at the record that was presented then, and what happened later in the trial doesn't matter. One reason we tend not to review it if we've got a final determination to review instead. Well, and here's why it's important in this case. I mean, as a logical matter, it's important in this case because the whole thing would have looked different to the jury. The jury was asked to decide the very question that was wrongly decided by the court. In other words, our submission here is that the district court should have ruled as a matter of law that A, the respondent was the agent, and B, that the respondent had violated its fiduciary duty. But the jury wasn't told that it wasn't an agent, right? No, but the jury got the... Just a minute. Okay. Surely. And you're not objecting to the instructions that the jury was given? Well... Or to anything that happened at the trial on this question? That's correct. So there doesn't seem to be any point at all in going behind it. Well... In addition to which, there's a clear case law that you don't. The jury should not have been permitted to decide that my client was not, excuse me, that the respondent was not the agent. The jury got to decide something it shouldn't have been permitted to decide. But then what you're really saying is there should have been a direct verdict after the jury trial, but you never got that, and you're not saying you should have. In other words, the jury, as a matter of law, you're, there was, you could not reasonably decide that there was no breach of fiduciary duty. Then the jury verdict should be overturnable for that reason, but you're not arguing that. Well, what I'm arguing, Your Honor, is we never should have gotten there. I mean, what happened, in fact, in the case was the respondent changed its story and a whole different set of facts were presented to the jury than what was presented to the court on the motion for summary judgment. The whole case would have evolved differently had the correct law been applied on the motion for summary judgment. Can you give me a case in which we have ever reviewed a summary judgment? I can't right at this moment. A denial of a summary judgment on a factual issue that then went to trial. I cannot at this moment. I gather that there's no judgment, there's no motion for judgment as a matter of law. There was not a motion for judgment. Connection with the jury verdict, yeah. Correct. The trial counsel did not move for judgment of matter of law on the fiduciary duty claim. That's correct. Are there any questions? The third point I wanted to address with the Court, which was the standard of review here. As to which? As to the review of the granting of the summary judgment against my client on the grounds of distinctiveness. We submit that that's not clear error. As I understand, your Ninth Circuit case is Goss, is that correct? The case that you're relying on? I don't believe so, Your Honor. Well, that's the OAG Travel Planner case. I'm sorry, thank you, Your Honor. Yes, OAG Travel Planner v. Goss, yes. And that was kind of tactfully set aside in the subsequent case. In what case is that, Your Honor? Well, I'm looking at a case returned on appeal in 1993 before a different panel. And so this is an official Alliance Guides against Goss. When the case came back up, it was not on the same question that the Court ruled in the decision that we've cited. And the Ninth Circuit did not reverse itself when it came back. On the contrary, what it said was that that's the law of the case. What? That it was the law of the prior holding was the law of the case. That's exactly right. It wasn't exactly. The case was, that case was very unusual in that unlike the appellant in this case, which is not claiming that the law firm part of the mark is protectable, it's only that in connection with the initials, the OAG travel planner was taking the position that the travel planner piece of the mark was protectable. And that's what went back and what most of the rest of the case was about, if I'm remembering this correctly. And it's an unusual case in that regard. But with regard to the initial piece of it, whether or not initials are arbitrary and therefore inherently distinctive, no case that we have found, whether in the Ninth Circuit or anywhere else, has ruled otherwise. Again, to the contrary, every single case has held that initials are inherently distinctive or found that initials are inherently distinctive. Okay. If you want to reserve any time. I've got one minute. It is time for me to sit down if I want any rebuttal. Thank you very much. May it please the Court. Roger Townsend representing Apelli Chameleon Data Corporation and Derek Doan. I'm here with my client, Mr. Doan. I'll respond according to Mr. Savitz's organization with regard to the standard review. I think that there is a misperception regarding the holding below as to what Judge Zille found and the posture at which it was presented. Was that a summary judgment? Yes, it was on summary judgment. Was not? It was on summary judgment, Your Honor. The question is what was the basis of which he found it. And the basis was that he looked at these words and the phraseology that he uses, I think, creates the inference that he considered all of the language in the mark, all of the words, and specifically he states these words are part of our common language and under the law are entitled to no protection. But whatever it was, it was on summary judgment and therefore is reviewable to no one, no? It's correct, Your Honor. Okay. But what was... It wasn't a finding in that sense. It wasn't a finding in the sense that the trier of fact. But as the Court is well aware, the Ninth Circuit is called upon to review factual determinations that are made in the context of summary judgment. And Judge Zille had beforehand... But the actual determinations are not made in the context of summary judgment. Well, I dispute that, Your Honor. I would say that the courts regularly make determinations that there is no triable question of fact sufficient which to send the case to the jury. And so I think that's the situation we have here. There was no fact both in the question of genericness, so the Court makes a determination on that, and then later on the Court revisits the question, and that's in the record as well, as to the issue of whether or not there's been secondary meaning. So therefore the Court does not, this panel does not need to follow the initial determination of the district court and say that CC law firm is a generic term. In fact, the Court can continue... Well, we don't need to do any of those things because it's summary judgment. We just need to decide whether or not there was a triable issue of fact de novo and looking at the record de novo as to whether it is distinctive or isn't distinctive. Correct, Your Honor. And that's the key... Just to ground me again. Could you answer the questions I was asking before? Yes. Is there a definition in the Lanham Act of mark or are these five categories are not in the statute as I understand it? You know, Your Honor, as Your Honor asked that question, I, and as I'm sure as Mr. Identifier, unique identifier that identifies the source or quality of goods and services. And my recollection of looking at it is that I have seen that in the statute, but I believe it to be the Washington State statute that defines it clearly. And do you have any explanation for why the cyber squatting statute in particular talks about personal names and seems to have a particular interest in protecting personal names when just the rest of the Lanham Act doesn't? Well, I think the domain name system creates unique problems in terms of the uniqueness of a domain name, whereas you can only have one christianson.com, whereas there might be many christiansons, as to tying in the reality of the technical reality of the domain name system with the... What I'm really asking is whether it's lucidly clear that the same definition used for confusion purposes applies here to the use of personal names as domain names. I think that the trademark law is always concerned... I know trademark law is. I'm asking whether the cyber squatting part of it... Yes. ...has incorporated, even though it uses this unique language, has incorporated entirely the same concepts that apply to trademark protection with regard to confusion. Vis-à-vis the definition of the word mark in the Anti-Cyber Squatting Act versus the Lanham Act. Is that the question, Your Honor? Yes. I have always operated under the assumption... Well, everybody seems to be operating under that assumption. I'm just wondering why you have the special language in there. I mean, if, for example, somebody decided to make it... to register my name, Marsha, as Verzon, as a mark... not as a mark, as a website, or as a whatever, is... the statute just wouldn't care about that, on your theory? No, not at all the case. I would say that that then... your individual name is not a protectable trademark under the Lanham Act, but it can be a protectable domain name under the Anti-Cyber Squatting Act. Well, that's what I'm trying to find out. Why is that? And if it is so, why are we looking only at trademark cases with regard to this case? I think I would hearken back just to the nature of the domain name system and the technical reality of it, that you can't have two domain names that are precisely the same that might have an individual's name, and whereas there are multiple individuals with your name... I mean, what you just said is my instinct as well, and that's why I'm wondering why Christensen... if she had just said Colleen Christensen, for example, could she have had a protectable domain name? If she had just had Colleen Christensen, yes. I think that Colleen Christensen could be protectable as a domain name. Even though it could be as a mark, for confusion purposes. That's correct, Your Honor, because there can only be one... So then aren't we in just a whole different world in terms of why we're even... because all of the cases that everybody is citing are just traditional Lanham Act cases that have nothing to do with cyber squatting, and that's why I was becoming restive in reading this, because it's not clear to me that there is a complete translation like that. My understanding, and everyone I know, that all these trademark cases operate on the understanding that this is just a component of trademark law. You're just telling me you have the same instinct I do, that it's not necessarily so. Well, it has some unique technical realities that need to be navigated around from a legal perspective, but that you still need to demonstrate, you still have the hierarchy of genericness down to fanciful, and you still have the necessity of proving secondary meaning around a merely descriptive mark. So what about the OIG case? Why isn't that controlling here as to the CC, or in part? Your Honor, the OIG case has two distinctions that we identified in that brief. First off, the analysis of the court below did not view the names in the entirety. So this, as we've gone back in the briefing discussion, is whether we review all the characters as one domain name versus isolating them into these words. The petitioner seized on this language, this kind of fleeting language from the district court saying these words, and I don't believe that that's what happened below, that the court parsed the words individually and said, as the OIG court did, and said, well, online, airline, and guide are all in their individual capacity not protectable. So therefore, we find them to be not a protectable mark. What happened, the reason that case was reversed is that they should have been viewed in their entirety. That's not what happened here. Judge Zille did view these characters and letters in their entirety and would therefore rule appropriately and follow the law, and that should not be disputed. What's your best case to show that's the law? I don't think there's any dispute, Your Honor, that we all agree that the mark should be viewed in its entirety. All right. But what's the best case supporting your position that CC often was not distinctive? Your Honor, I don't have a specific best case. I think that the – Do you have any case? Well, I would cite to our brief, and we've certainly cited lots of trademark cases. I think what we've done is applied the appropriate standards under trademark laws. Is there a case dealing with the use of letters rather than names that say that the use of letters either with or without attached to another word is not distinct? Is not – excuse me – not distinctive? Your Honor, I don't have a specific case that's dealing with initials as connected to another name. But we do have this – we have our OIG case, and we have a lot of secondary – McCarthy and everybody else seems to say it over and over again that letters are different than names and that it's distinctive because it can't be pronounced and it's not – it doesn't necessarily refer to anything in particular and so on. I would – and I'm not sure you're used to the word distinctive here and what you mean by that. But I think, again, I would go back to Judge Zille's addressing this as descriptive. I mean by that is what case law means by it, but go ahead. Well, I think it's descriptive. I know that's what you think, but we want a case that supports that as opposed to the fact that it's distinctive. I think that the fact that we are talking about a law firm that was managed by someone with the initials CC makes it descriptive of the law firm. Well, OIG was talking about a firm whose name started with O-A-N-G. Correct, Your Honor. But that didn't seem to influence the result. Well, I think that, again, that the district court below approached it incorrectly. But then you – but then we're back to the standard proof question because it doesn't really matter what the district court below did because the question here is whether looking at the record de novo there is a tribal issue of fact. That's the question. Correct, Your Honor. And as Your Honor noted in Petitioner's brief or argument is that this case did go to trial and this case did found not on this issue, but the entirety of the case did go to trial and the jury found resoundingly on behalf of the defendant that what the defendant did here was appropriate. And it went to on the issue of the fiduciary duty. So I think as to what Mr. Savitz said, the argument for the district court would be clear that there is no bad faith. And I would add, Your Honor – Well, but then we can have that argument. But that's not what's sitting here now. That's correct, Your Honor. But I will add – I will make one point is that I think that Judge Zille, should this case go back before him again, is free to revisit the issue of registration and that there have been disputes back and forth on that in the briefing. And the issue of registration, I think, is clear that there wasn't a registration. And Judge Zille says later, and we put it in our brief, boy, if I knew what I knew then, you've given me a lot more to think about. I think there was a recent case of this Court saying that you can have successive motions for summary judgment, so you probably could. I'm sorry, Your Honor? You probably could raise a second motion for summary judgment on the same issue. Right. So, Your Honor, I want to make that clear. And I think if it did go back, there would be a real question as to what damages. I think that has been the theme throughout the case, and that was the theme at trial, that – and the reason why the conversion claim did not get submitted to the jury is because the damages were not compensable. The damages in that instance were those damages expended by an attorney in the prosecution of this case, and that the damages were translated to, well, I hired another associate and this is what I paid my associate because I was distracted by prosecuting my case. In fact, what we're really talking about is a very brief period of time in which an IT vendor provided services that were not available to a client for a brief time. It's really not a federal case and should not have – should not be here. Was there any jurisdictional question as to the amount? I'm sorry, Your Honor? Was there any jurisdictional question as to the amount in controversy? No, it's a federal statute, so it's not under diversity. Okay. So we were – at that point the case was – still had the district court kept it under pendent jurisdiction. Unless the panel has any further questions? Thank you very much. Thank you, Your Honor. We've got a minute. Very briefly, you know, most – I spent some of my time sitting there pondering the question Your Honor has asked about personal name. The reason we've addressed it the way we have is that the cases under the cyberpiracy statute assume that it's – assume that the logic is the same. And an example for example – In fact, I'm not sure any of the cases you cited were under the cyber – Well, the Laoti case, the Verochek v. Laoti case was a case which involved both elements of confusion and cyberpiracy. And it assumed, without actually addressing the very question Your Honor has posited, that indeed the standard was the same. And I – all I guess I want to say is that certainly the personal name reference in the cyberpiracy statute itself suggests there may well be a difference, and if that's something the court would like further briefing on, we'd be happy to do it. In conclusion with my six seconds, I simply want to say that the OAG case was not fleeting language. It couldn't have been more clear that it said, OAG plus more descriptive term equals inherently distinctive. Thank you very much for the court's patience with us. The case of Christianson v. Farnley is appealed, and that is submitted, and we'll take a 10-minute break. Thank you.
judges: Canby, Noonan, Berzon